IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

ALFRED SCHAER,

    Plaintiff,

vs.

DUNN & PHILLIPS, LLC f/k/a
DEAN & STERN, LLC,
and RYAN STERN,

    Defendants.
_____/

Case No: _____

Division: _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ALFRED SCHAER, by and through his undersigned counsel, sues Defendants, DUNN & PHILLIPS, LLC, a Colorado Limited Liability Company f/k/a DEAN & STERN, LLC ("DEAN & STERN"), and RYAN STERN ("STERN"), and alleges:

### PARTIES, JURISDICTION AND VENUE

1. This is an action for damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees. This Court has jurisdiction pursuant to Florida Statutes § 26.012.

2. DUNN & PHILLIPS, LLC was formally known as DEAN & STERN, LLC. At all times material, DEAN & STERN was a Colorado Limited Liability Company engaged in the practice of law.

3. At all times material, STERN was a managing member, officer and agent of DEAN & STERN acting within the course and scope of his agency.

4. This Court has *in personam* jurisdiction over STERN pursuant to Florida Statutes § 48.193 as he engaged in business and committed a tortious act in the State of Florida.

5. STERN has appointed the Secretary of State as his agent for the purposes of process pursuant to Florida Statutes § 48.181 because at relevant times, STERN was a non-resident conducting business, in the form of providing legal services, within the state of Florida.

6. This Court has *in personam* jurisdiction over DEAN & STERN pursuant to Florida Statutes § 48.193 as it engaged in business and committed a tortious act in the State of Florida through its agent, STERN.

7. Venue is proper as the cause of action accrued in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

8. In or around February of 2005, STERN agreed to serve as Plaintiff's lawyer in connection with the contemplated purchase of all of the outstanding stock of Tomasello & Associates, Inc. n/k/a Computer Management Consultants Limited, Inc. ("CMC"), a company located in Hillsborough County, Florida.

9. At the time, CMC was an S-Corporation as its shareholders had elected to pass corporate income, losses, deductions, and credits through to the shareholders for federal income tax purposes pursuant to Subchapter S of the Internal Revenue Code.

10. In connection with the representation, STERN undertook to advise Plaintiff of both the tax and transactional implications of the stock purchase and to negotiate and prepare the agreements between Plaintiff and the selling shareholders.

11. STERN also agreed to handle the closing of the transaction in accordance with the agreement and to file all appropriate tax documents with the Internal Revenue Service in connection with the transaction.

12. Pursuant to the engagement, STERN prepared a Stock Purchase Agreement to acquire the stock of CMC in the name of a company wholly owned by Plaintiff, International Staffing Resources, Inc., a Florida corporation ("ISR").

13. STERN and Plaintiff agreed that ISR would be an S-Corporation and that Plaintiff would elect to pass corporate income, losses, deductions, and credits through for federal income tax purposes pursuant to Subchapter S of the Internal Revenue Code.

14. In addition, STERN and Plaintiff agreed that CMC would be a Qualified Subchapter S Subsidiary (i.e., an S-Corporation owned by an S-Corporation) by filing an appropriate election with the Internal Revenue Service.

15. By virtue of these tax elections, all tax consequences of ISR's stock ownership would be borne by Plaintiff following the closing.

16. In addition, CMC obtained financing for its business through a company named BACC.

17. Under the terms of the agreement between CMC and BACC, BACC was required to consent to a change in control of CMC. STERN was aware that BACC's consent would be required for the transaction to close, and Plaintiff relied on STERNS advice concerning the timing and effect of BACC's consent.

18. On March 10, 2005, Plaintiff, STERN, the selling shareholders, and the selling shareholders' counsel, among others, met in Miami, Florida to finalize the negotiations and conclude the Stock Purchase Agreement.

19. It was specifically discussed and agreed by the parties that the price Plaintiff would pay for the stock was based upon the financial condition of the company as it existed on March 10, 2005.

20. In addition, all necessary changes to the Stock Purchase Agreement were negotiated between the parties and agreed; it was left to STERN to revise the agreement accordingly and circulate it for signature to all interested parties.

21. However, as of March 10, 2005, BACC's consent to the change of control had not been obtained. Plaintiff relied on STERN'S advice concerning the tax consequences of BACC'S consent on the date of the closing and based upon his consultations with STERN was led to understand that the IRS would use the March 10, 2005 for the date of the closing.

22. STERN revised the agreement and it was executed by Plaintiff and the selling shareholders within a day or two of the meeting. The agreement was dated March 10, 2005.

23. Ultimately, BACC consented to the change of control and the stock of CMC was transferred to ISR on or about March 21, 2005.

24. Importantly, between March 10, 2005 and March 21, 2005, the cash position of CMC changed dramatically such that the pass through consequences of stock ownership in CMC changed dramatically.

25. Following the closing, STERN filed a Qualified Subchapter S Subsidiary election for CMC with the Internal Revenue Service with an effective date of March 10, 2005.

26. In 2006, Plaintiff, in reliance on STERN's advice, filed tax returns for CMC. One return was filed for the period of January 1, 2005 to March 10, 2005 and contained Schedule K-1's identifying the selling shareholders as being responsible for the taxes for this period. The second return was filed for the period of March 11, 2005 to December 31, 2005 and contained Schedule K-1's identifying Plaintiff as being responsible for the later period.

27. The selling shareholders challenged the short year tax return filed with the IRS.

28. After investigation, the IRS concluded that the closing had actually occurred on March 21, 2005, not March 10, 2005, and assessed Plaintiff an additional $525,665 in taxes due to pass through income accruing between March 10, 2005 and March 21, 2005, as well as penalties of $105,133.

29. The IRS based its assessment on the definition of closing in the Stock Purchase Agreement, the absence of any provision memorializing the parties' agreement that the stock was priced at its March 10, 2005 value, and the circumstances concerning the BACC consent.

30. Plaintiff was required to hire tax attorneys, certified public accountants, and other professionals to dispute the IRS assessment, ultimately resulting in significant litigation before the United States Tax Court and significant expense to Plaintiff.

31. On March 21, 2012, Plaintiff and the IRS reached a final resolution of the tax litigation, requiring Plaintiff to pay additional taxes and interest.

32. STERN also undertook to cancel the stock of the selling shareholders on the books and records of CMC, to issue new stock certificates in the name of ISR, and to deliver the newly issued stock certificates back to the selling shareholders to hold as collateral for future installment payments payable by Plaintiff.

33. Stern failed to timely deliver reissued stock certificates to the selling shareholders, resulting in claims against Plaintiff by the selling shareholders that Plaintiff breached the contract and committed fraud.

34. All conditions precedent to the maintenance of this action have occurred.

## PROFESSIONAL MALPRACTICE

35. As Plaintiff's lawyer, STERN owed Plaintiff duties of care.

36. STERN breached those duties by negligently failing to protect Plaintiff in the Stock Purchase Agreement against potential swings in Subchapter S tax liability occurring after March 10, 2005.

37. As a direct and proximate result, Plaintiff suffered damages, including attorneys' fees and accounting fees, as well as taxes and interest that Plaintiff would not otherwise have incurred.

WHEREFORE Plaintiffs demands judgment against STERN and DEAN & STERN for damages, costs, and such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable as of right.

Dated this 28th day of October, 2013.

s/ Timothy W. Weber

Timothy W. Weber, Esq.
FBN: 86789;  SPN: 01838661
timothy.weber@webercrabb.com
lisa.willis@webercrabb.com
Joseph P. Kenny, Esq.
FBN: 59996; SPN: 03051060
joseph.kenny@webercrabb.com
sandra.peace@webercrabb.com
Weber, Crabb & Wein, P.A.
Wittner Centre West Office Building
5999 Central Avenue, Suite 203
St. Petersburg, Florida 33710
Telephone No.: (727) 828-9919
Facsimile: (727) 828-9924
Attorneys for Plaintiff